Exhibit E to Ferber Declaration

Paseornik22108

1

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF NEW YORK
 3                      - - -
 4   ANTONNE M. JONES              :
 5           Plaintiff             :
 6      -vs.-                      :
 7   ROC-A-FELLA FILMS, INC.,      :
     LIONSGATE FILMS, INC.,        :
 8   DAMON DASH and SHAWN CARTER   :
 9           Defendants            : 07-CV-3648
10                      - - -
11           Oral Deposition of MICHAEL PASEORNEK,
12   taken pursuant to notice, held in the offices of
13   AMBROSE WOTORSON, P.C., 26 Court Street, Suite 1811,
14   Brooklyn, New York 11242, beginning at 2:36 p.m., on
15   Thursday, February 21, 2008, before Lillian
16   Davis-Court Reporter and Notary Public there being
17   present.
18
19
20
21                      - - -
22              A & A Court Reporting
                & Videoconferencing
23           Constitution Place, Suite 400
                325 Chestnut Street
24           Philadelphia, Pennsylvania 19106
                   (215) 829-9300
25                      - - -
```

2

```
 1   APPEARANCES:
 2
     AMBROSE WOTORSON, P.C.
```

Page 1

```
                                      Paseornik22108
 3   BY: AMBROSE WOTORSON, ESQUIRE
     26 Court Street, Suite 1811
 4   Brooklyn, New York 11242
     Phone: (718)797-4861
 5   Representing the Plaintiff

 6


 7   PRYOR CASHMAN, LLP
     MARK A. TAMOSHUNAS, ESQUIRE
 8   410 Park Avenue
     New York, New York 10022
 9   Phone: (212)326-0438
     Representing Lions Gate (Defendant)
10

11   Also Present:

12   Antonne M. Jones
     Antonio Dunlop
13

14

15

16

17

18

19

20

21

22

23

24

25
```

                                                                3

```
 1                   I N D E X

 2   WITNESS:

 3   MICHAEL PASEORNEK                    PAGE NO.

 4

 5   EXAMINATION BY:

 6   AMBROSE WOTORSON:                        6

 7
```

Page 2

Paseornik22108

```
12        right to do so, so that's not always the
13        case. But if we are commissioning as a
14        company a rewrite on a script we will
15        always have a contract to go along with
16        that rewrite. If we're not commissioning
17        but the director takes the leeway to
18        interpret certain things and we agree to it
19        on the set then there wouldn't be a
20        contract.
21 BY MR. WOTORSON:
22 Q.   We're going to come back to this topic but let
23 me go on to something else. Prior to being the
24 president of Lions Gate Films did you hold any other
25 positions with Lions Gate?
```

12

```
1  A.   No. That's the only position I held.
2  Q.   How long have you been the president of Lions
3  Gate Films?
4  A.   To clarify, a film production there's
5  different -- I have been since Lions Gate became a
6  public company, which I believe was in 1995 or '96.
7  I may be wrong on the date.
8  Q.   But roughly around '95 or '96 is what you're
9  saying to me?
10 A.   Yeah.
11 Q.   And I just want to make sure. You're president
12 of what division of Lions Gate Films?
13 A.   President of film production.
14 Q.   Prior to becoming the president of Lions Gate
15 Films Production in or around 1995 to 1996 what did
```

Paseornik22108

15  BY MR. WOTORSON:
16  Q.  Can you please answer the question?
17  A.  Yes. As it says here, we do have some creative
18  control then retaining over the script.
19  Q.  Stepping outside of the four corners of this
20  contract, do you remember, sir, whether or not LGF
21  actually exercised any creative control over the
22  script that it actually purchased?
23           THE WITNESS: We did not.
24           MR. TAMOSHUNAS: Objection to the
25       form.

34

1  BY MR. WOTORSON:
2  Q.  So if I'm understanding you, while LGF did
3  retain creative control over the script it did not
4  actually exercise any additional creative control
5  over the script. Am I correct so far?
6           MR. TAMOSHUNAS: Objection to the
7       form.
8           THE WITNESS: Not to my
9       recollection. But I would like to clarify,
10      not to my recollection.
11 BY MR. WOTORSON:
12 Q.  ** Okay. I understand.
13      If we skip to paragraph nine of this
14 document, and I'll read a portion, RAFF will be
15 entitled to 50 percent of adjusted gross in
16 accordance with the following definition, namely,
17 adjusted gross shall mean all gross revenues
18 received by and credited to LGF, its parent