Exhibit P to Ferber Declaration
Part 1

Victor A. Dunlop (VAD-8571)
DUNLOP & ASSOCIATES, P.C.
55 Washington Street, Suite 451
Brooklyn, New York 11201

Ambrose W. Wotorson (AWW-2142)
Law Offices of Ambrose W. Wotorson
26 Court Street, Suite 1811
Brooklyn, New York 11201

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ANTONNE M. JONES,

                Plaintiff,

      -against-                                      07 Civ. 3648 (KNF)

ROC-A-FELLA FILMS, INC., LIONS GATE
FILMS, INC., DAMON DASH and
SHAWN CARTER,

                Defendants.
----------------------------------------X

### PLAINTIFF'S RESPONSE TO DEFENDANT LIONS GATE FILMS, INC.'S SECOND SET OF INTERROGATORIES

Antonne M. Jones ("Plaintiff") responds to Defendant Lion Gate Films, Inc.'s ("Defendant") Second Set of Interrogatories ("Requests") as follows:

### GENERAL OBJECTIONS

1. Plaintiff objects to the Interrogatories to the extent that they are vague, unduly burdensome, overly broad, unlimited as to time, or directed to any information which is relevant to the subject matter of the present action and therefore will not reasonably lead to the discovery of admissible or relevant evidence.

2. Plaintiff objects to the Interrogatories on the grounds that they use defined terms that are confusing, ambiguous, and/or argumentative.

FROM :KJMPLLC                    FAX NO. :7184039593          Feb. 29 2008 02:40PM  P3

3.  Plaintiff objects to the Interrogatories to the extent that they seek information or documents that are protected by any privilege including but not limited to, the work-product and attorney-client privileges. The inadvertent disclosure of any privileged information or document shall not constitute a waiver of any privilege or any other ground for the objection to discovery at any time.

4.  Plaintiff objects to the Interrogatories to the extent that they seek materials prepared in anticipation of litigation or for trial, or which seek the discovery of the mental impressions, conclusions, opinions or legal theories of counsel or any other representative of Plaintiffs concerning this litigation. The inadvertent disclosure of any such information or documents shall not constitute a waiver of any privilege or any other ground for the objection to such discovery at any time.

5.  Plaintiff objects to the Interrogatories to the extent that they demand documents or information that are confidential, proprietary or trade secret information. The inadvertent disclosure of any privileged information or documents shall not constitute a waiver of any privilege or any ground for the objection to discovery at any time.

6.  Plaintiff objects to the Interrogatories, including the "Definitions" and "Instructions" therein, to the extent that they demand responses that are beyond the permissible scope of discovery permitted under the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York.

7.  Plaintiff objects to the Interrogatories to the extent that they demand information that it is not within their possession, custody, or control or which seek information that is not maintained in the form or format requested.

8.  Plaintiff reserves the right to supplement his responses to any of the Interrogatories up to and including the time of trial. The responses contained herein are based upon Plaintiffs' knowledge, belief and information at the present time.

9.  Plaintiff does not waive any objection as to the admissibility of any information provided in connection herewith or the right to object to any other

PAGE 3/9 * RCVD AT 2/29/2008 2:33:07 PM [Eastern Standard Time] * SVR:NY21/7 * DNIS:6932 * CSID:7184039593 * DURATION (mm-ss):03-58

discovery requests involving or relating to the subject matter of the Interrogatories or the responses thereto.

10. Notwithstanding anything herein to the contrary, none of the responses herein constitute a waiver of these General Objections, or are these responses an acknowledgement by Plaintiff that he is aware of any documents that are currently in his possession, custody or control that contain knowledge or information responsive to the Interrogatories.

## PLAINTIFF'S RESPONSE TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify each and every individual or entity to which Plaintiff, or anyone acting on his behalf, sent a copy of The Family by [sic] in an attempt to sell, or solicit interest in, film rights to that novel, and for each individual or entity identified, state the (i) date The Family was transmitted, (ii) form of that transmission, (iii) individual that sent The Family, (iv) individual to whom The Family was sent, and (v) substance of such communication.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that it is unduly burdensome and overly broad, specifically the terms "each and every." Subject to the General Objections, which are incorporated herein, Plaintiff responds as follows:

(a) Damon Dash
   i. In or about July 1998
   ii. Bound manuscript
   iii. Antonne M. Jones
   iv. Personally handed a copy to Damon Dash
   v. Discussed a film, acquisition and development deal

(b) Roc-A-Fella Films, Inc.
   i. In or about July 1998
   ii. Bound manuscript
   iii. Antonne M. Jones

3

      iv. Personally handed a copy to Damon Dash, who then handed it to Shawn Carter, believed to be a corporate officer of Roc-A-Fella Films, Inc.

      v. Discussed a film, acquisition and development deal

(c)    Overbrook Entertainment

      i. In or about June, 1998

      ii. Bound Manuscript

      iii. Antonne M. Jones

      iv. Personally handed a copy to Troy Carter

      v. Discussed a film, acquisition and development deal

(d)    Jane Rosenthal

      i. In or about November, 1999

      ii. Paperback novel

      iii. Antonne M. Jones

      iv. Bert Padell

      v. Upon information and belief, the substance of the communication was the discussion of a film, acquisition and development deal

(e)    Tribeca Films and Robert Deniro

      i. On or about November 1, 1999

      ii. Paperback novel

      iii. Antonne M. Jones

      iv. Bert Padell

      v. Upon information and belief, the substance of the communication was the discussion of a film, acquisition and development deal

(f)    Stanley Tucci

      i. In or about November, 1999

      ii. Paperback novel

4

PAGE 5/9 * RCVD AT 2/29/2008 2:33:07 PM [Eastern Standard Time] * SVR:NY21/7 * DNIS:6932 * CSID:7184039593 * DURATION (mm-ss):03-58

      iii. Antonne M. Jones
      iv. Bert Padell
      v. Upon information and belief, the substance of the communication was the discussion of a film, acquisition and development deal

(g) Thomas Carter Productions
      i. In or about 2001
      ii. Paperback novel
      iii. Antonne M. Jones
      iv. Mailed a copy of the paperback novel to Thomas Carter Productions after speaking with representatives from that company
      v. Discussed a film, acquisition and development deal

(h) Blackwood Production Company
      i. In or about 2001
      ii. Paperback novel
      iii. Antonne M. Jones
      iv. Personally handed a copy of the paperback novel to Dean Agnes
      v. Discussed a film, acquisition and development deal

(i) The Vines Agency, Inc.
      i. On or about February 22, 2002
      ii. Paperback novel
      iii. Antonne M. Jones
      iv. Personally handed a copy of the paperback novel to James C. Vines of The Vines Agency, Inc.
      v. Entered into an agreement with The Vines Agency, Inc. to market and promote the novel in all media, including motion pictures, and to be Plaintiff's exclusive agent in an attempt to secure an acquisition or film deal.

5

PAGE 6/9 * RCVD AT 2/29/2008 2:33:07 PM [Eastern Standard Time] * SVR:NY21/7 * DNIS:6932 * CSID:7184039593 * DURATION (mm-ss):03-58

(j) Patriot Pictures
  i. On or about November 2, 1999
  ii. Paperback novel
  iii. Antonne M. Jones
  iv. Mailed a copy to Stephen Stone at Eldon Publishing, who sent it to representatives at Patriot Pictures.
  v. Upon information and belief, the substance of the communication was a film, acquisition and development deal.

(k) John Sally
  i. In or about 2001
  ii. Paperback novel
  iii. Antonne M. Jones
  iv. Personally handed copies of the paperback novel to Mr. Sally at Trump International Hotel in New York City.
  v. Discussed a film, acquisition and development deal.

(l) Antra Films
  i. In or about 1997
  ii. Bound Manuscript
  iii. Antonne M. Jones
  iv. Personally handed copies of the bound manuscript to Joseph Marrone
  v. Discussed a film, acquisition and development deal.

**INTERROGATORY NO. 2:** Identify each and every communication Plaintiff or anyone acting on his behalf had with any of the Defendants, stating (i) the date of such communication, (ii) the form of such communication, (iii) the individuals that had such communications, and (iv) the substance of such communication.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that it is unduly

6

burdensome, overly broad, unlimited as to time, and not directed to any information which is relevant to the subject matter of the present action and therefore will not reasonably lead to the discovery of admissible or relevant evidence. Plaintiff further objects to this request on the grounds that it is vague and ambiguous at least as to the phrase "each and every communication". Subject to the General Objections, which are incorporated herein, Plaintiff responds as follows:

1.  (i) In or about July 1998;
    (ii) Plaintiff personally spoke with Damon Dash at a meeting;
    (iii) Plaintiff, Damon Dash, Carline Balan and Ronald T. Welton; and
    (iv) Plaintiff personally spoke with Damon Dash about creating a film from his novel, The Family.

2.  (i) In or about August 1998;
    (ii) Plaintiff spoke with Damon Dash on the telephone;
    (iii) Plaintiff, Damon Dash and Carline Balan;
    (iv) Plaintiff and Damon Dash spoke about The Family, including but not limited to the subject matter, whether it was based in fact or fiction, and the length of the manuscript.

3.  (i) In or about August 1998;
    (ii) Plaintiff personally spoke with Damon Dash and Shawn Carter of Roc-A-Fella Films, Inc. at a meeting;
    (iii) Plaintiff, Damon Dash, Shawn Carter, Kareem Burke, Kyambo Joshua, Carline Balan, and Ronald T. Welton; and
    (iv) Plaintiff personally spoke with Damon Dash and Shawn Carter on behalf of Roc-A-Fella Films, Inc. about creating a film from his novel, The Family after Damon Dash acknowledged that he read the manuscript to The Family.

4.  (i) On or about December 20, 2007;

7

PAGE 8/9 * RCVD AT 2/29/2008 2:33:07 PM [Eastern Standard Time] * SVR:NY21/7 * DNIS:6932 * CSID:7184039593 * DURATION (mm-ss):03-58

    (ii)    Plaintiff personally spoke with Damon Dash at the conclusion of Plaintiff's deposition;

    (iii)    Plaintiff, Victor A. Dunlop, Mark Tamoshunas, Tom Ferber, and Stuart M. Riback;

    (iv)    Plaintiff personally spoke with Damon Dash about the instant action;

**INTERROGATORY NO. 3:** Identify all facts, documents and/or other evidence which you contend demonstrates that any of the Defendants had access to The Family.

**RESPONSE:** Plaintiff objects to this interrogatory on the grounds that it is unduly burdensome and overly broad, specifically the terms "documents" and "other evidence" since The Family, having been published in 1999, is so widely disseminated. Subject to the General Objections, which are incorporated herein, Plaintiff responds as follows:

    (a)    Plaintiff personally handed Damon Dash a copy of The Family, in bound manuscript form, in or about August 1998 giving him direct access to it;

    (b)    The Family, as a paperback novel, was published in August 1999 and therefore has been widely disseminated for over eight (8) years making it a reasonable possibility that Defendants had access to its contents; and

    (c)    Plaintiff offers documents evincing proof of The Family's publishing, as well as, orders placed for The Family from several outlets and retailers, copies of which were delivered to attorneys for Lions Gate Films, Inc. with Plaintiff's Response to Lions Gate Films, Inc.'s First Set of Request for Document Production.

**INTERROGATORY NO. 4:** List each and every element within State Property and/or State Property 2 which you contend is substantially similar to The Family or The

8

FROM : KJMPLLC                    FAX NO. :7184039593                    Feb. 29 2008 02:44PM P1

Family II, identifying the corresponding portion of The Family or The Family II, and describing why each such element is contended to be substantially similar.

**RESPONSE:** Subject to the General Objections, which are incorporated herein, Plaintiff responds as follows:

1a. *The Family* begins with its protagonist, Anthony, narrating a chronological, detailed story of how he and his crew, called the "NRP," reached the pinnacle of the Philadelphia drug trade by taking over rival drug crews and mini-organizations by controlling the best quality and largest quantity of cocaine. Anthony is speaking of past events from a prison cell.

1b. *State Property* opens with its protagonist, Beans, narrating a chronological, detailed story of how he and his crew, called the "ABM", reached the pinnacle of the Philadelphia drug trade by taking over rival drug crews and mini-organizations by brute force and murder. The climax of State Property lets the viewers know that Beans was also narrating the story from a prison cell.

1c. The plot, setting, theme, overall essence, and feel of these two comparative elements are the same.

2a. Relatively early in *The Family*, Anthony introduces the readers to his most trusted associate and best friend, Mark and shortly thereafter he introduces the two other members of his crew, Dante and Shawn, the four which form the foundation of the "NRP".

PAGE 1/10 * RCVD AT 2/29/2008 2:37:06 PM [Eastern Standard Time] * SVR:NY21/7 * DNIS:6932 * CSID:7184039593 * DURATION (mm-ss):04-44

FROM :KJMPLLC                    FAX NO. :7184039593              Feb. 29 2008 02:44PM P2

2b. Relatively early in *State Property*, Beans introduces the viewers to Baby Boy, to whom he refers as his "right hand", as well as the remaining two members of the foundation of the "ABM", Blizz and D-Nice, thus also having a four member foundation.

2c. The number of group members and the special bond between the leader and one group member are the same.

3a. In *The Family*, each member plays a specific role in the "NRP" organization: Anthony is the leader and Mark is Anthony's "right hand" and the "muscle", while Dante and Shawn play supporting roles such as controlling and organizing the "NRP" street workers and purchasing firearms.

3b. In *State Property*, each member also plays a specific role in the "ABM" organization: Beans is the leader and Baby Boy is his "right hand", Blizz is the "muscle" and D-Nice controls and organizes "ABM" street workers along with his partner P-Nut (who was recruited after the "ABM" was formed).

3c. The roles delegated to each member of the "NRP" and the "ABM" are substantially similar.

4a. In *The Family*, Anthony and Mark discuss the idea of selling cocaine in order to make large financial gains, but they both realize that they lack sufficient funds to purchase a large amount of cocaine. Shortly thereafter, the foundation of the "NRP" meet at the "After Midnight" club in order to discuss their ultimate goal of "taking over" the city of Philadelphia by controlling the city's drug trade.

PAGE 2/10 * RCVD AT 2/29/2008 2:37:06 PM [Eastern Standard Time] * SVR:NY21/7 * DNIS:6932 * CSID:7184039593 * DURATION (mm-ss):04-44