Victor A. Dunlop, Esq. (VAD-8571)
DUNLOP & ASSOCIATES, P.C.
55 Washington Street, Suite 451
Brooklyn, New York 11201
718.403.9261 Telephone
614.455.9261 Facsimile

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONNE M. JONES,          ) | |
|            ) | |
|      Plaintiff,     ) | |
|            ) | **COMPLAINT FOR** |
|            ) | **COPYRIGHT INFRINGEMENT,** |
|      v.       ) | **UNFAIR COMPETITION,** |
|            ) | **MISAPPROPRIATION,** |
|            ) | **AND RELATED CLAIMS** |
| ROC-A-FELLA FILMS, INC., LION'S GATE  ) | |
| FILMS, INC., DAMON DASH and    ) | **(Jury Trial Demanded)** |
| SHAWN CARTER,        ) | |
|            ) | |
|      Defendants.   ) | <u>07</u> CV <u>3648</u> |
|            ) | |

Plaintiff, Antonne M. Jones (hereinafter "Plaintiff" or "Jones"), by and through his attorneys,

DUNLOP & ASSOCIATES, P.C., for his Complaint against Defendants, Roc-A-Fella Films,

Lion's Gate Films, Inc., Damon Dash, and Shawn Carter, (collectively "Defendants") allege as

follows:

## NATURE AND SUBSTANCE OF ACTION

1.    Plaintiff files this action against Defendants for Copyright Infringement under 17 U.S.C.

§§ 101, et seq., and Unfair Competition under the Lanham Act, 15 U.S.C. § 1125 (a)

and applicable state laws.

2.    This action is brought in response to a classic case of copyright infringement,

specifically the unauthorized copying, misappropriation and commercial, for profit use

and distribution of Plaintiff's work, in particular, the text, manuscript, plot, setting, total concept and feel, fundamental essence, structure, and overall expression of ideas that comprises Plaintiff's copyrighted work entitled "The Family- *A Philadelphia Mob Story*" ("The Family"). Title 17 of the United States Code (Copyright Act) was enacted to provide remedies to copyright owners that are victims of such actions.

3.  Specifically, Defendants have and continue to, with neither Plaintiff's authorization nor Plaintiff's consent, copy, advertise, market, promote, view, display, offer for sale, and sell the motion pictures entitled State Property and State Property 2, both of which contain probative and substantial similarities to, and amount to an improper appropriation of, Plaintiff's Work, thereby infringing Plaintiff's Work.

4.  In particular, State Property was commercially and theatrically released and distributed through both, national and international chains and continue to be offered for sale, sold, offered for rental, rented, and distributed through retailers such as Best Buy, Blockbuster Video, Hollywood Video, and Net-Flix Home Video as well as, over the Internet causing Plaintiff irreparable commercial harm, proof of said distribution, sales and rentals are annexed hereto as Exhibit A.

## JURISDICTION AND VENUE

5.  This is an action for copyright infringement arising under the Copyright Act of 1976, 17 USC §101 et seq., and for related claims of Unfair Competition under 15 U.S.C. §1125 (a), Common Law Misappropriation and applicable state laws, which seeks damages by reason of Defendants' ongoing willful infringement of Plaintiff's valid and subsisting copyright. This Court has jurisdiction of this action under 28 U.S.C. §1331 (federal

question), 1338(a) and 1338(b), its supplemental jurisdiction and under Rule 4 of the Federal Rules of Civil Procedure.

6.    Venue is proper in this district under 28 U.S.C. §1391 (b) and §1400(a) in that Defendants and/or Defendants' agents may be found in this district and that Defendants transact business in this district as well as, the acts of infringement occurred in this district

## **PARTIES**

7.    Plaintiff Antonne M. Jones is an individual and at all times mentioned in this complaint has and continues to maintain a residence in the State of Pennsylvania.

8.    Upon information and belief, Defendant ROC-A-FELLA FILMS, INC. ("Roc-A-Fella"), is now and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of New York, and at all times mentioned in this complaint has and continues to maintain a principle place of business located in the County and State of New York.

9.    Upon information and belief, Defendant LION'S GATE FILMS, INC. ("Lion's Gate"), is now, and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of Delaware, with a principle place of business at 2700 Colorado Avenue, Santa Monica, California 90404 and a registered agent in New York at 1633 Broadway, New York, New York 10019.

10.    Upon information and belief, Defendant DAMON DASH ("Dash"), now and at all times mentioned in this complaint conducts business in the State and County of New York and is a principle of Defendant Roc-A-Fella.  Dash is credited as a producer for State Property and as a director and writer for State Property 2.

11. Upon information and belief, Defendant SHAWN CARTER ("Carter"), now and at all times mentioned in this complaint conducts business in the State and County of New York and is a principle of Defendant Roc-A-Fella.

12. That upon information and belief and at all times hereinafter mentioned, Defendants conduct business in the State of New York and did conduct business in the State of New York and within the Southern District at, and prior to, the time of the initial infringement as well as, the ongoing infringement.

## FACTS COMMON TO ALL CLAIMS

13. Plaintiff is an author of fiction novels such as "The Family- *A Philadelphia Mob Story*", *La Familia* and "The Family II -*Life After Death*", novels that were published by Eldon Publishing Company and Clear Vision Publishing Company, respectively and are distributed on national and international scales, copies of the covers to the aforementioned novels are annexed hereto as Exhibit B.

14. Jones is the owner of Copyright Registration Number TXu 843-826, which was issued on July 2, 1998, for the copyrights in and to The Family, a copy of which is annexed hereto as Exhibit C. The registration identifies Jones as the exclusive owner of the copyright in and to the text that comprises The Family. Jones's copyright registration for The Family is valid and subsisting.

15. The Family was first published and commercially released in or about August 1999. Jones continues to sell and derive revenue from sales of The Family.

16. Jones is currently and has at all relevant times herein, been the sole owner of all right, title and interest in and to the copyright registration, including extensions and renewals thereof, and all of the text that comprises The Family. Jones has caused the publisher

4

and distributor of The Family to produce and distribute The Family in strict conformity with the provisions of the Copyright Act of 1976 and all other laws governing copyrights.

17.    Jones enjoyed critical acclaim for The Family from critics such as Mirror Match Entertainment, stating in part, "Antonne will definitely set a trend with this nail biting black mafia tome". Moreover, R.T. Welton of Wilmington Press for The Family II, stated, "Perhaps only an African-American writer with deep Philadelphia roots and passions could succeed as Mr. Jones has in symbolizing a dark society through the acts of true to life gangsters." Furthermore, Jones has enjoyed professional accolades such as The Family making the August 2001 Essence "Best Seller" list, Hip Hop Magazine's "Book of the Month", and Jones being made an honorary member of Lubbock, Texas, all as a result of notoriety that extends from The Family. Proof of the aforementioned accolades and accomplishments is annexed hereto as Exhibits D, E, F and G, respectively.

18.    On or about July 1998, Jones met with Defendant Dash at his then place of business, located at 14 John Street, New York, New York 10038, specifically for the purposes of discussing Jones's vision of adapting The Family, which was then in manuscript form, into a film ("1st Meeting").

19.    In addition to Jones and Defendant Dash being present at the 1st Meeting, upon information and belief, also present was Defendant Dash's and Defendant Carter's then personal secretary Carline Balan.

20. During the 1st Meeting, Jones advised Defendant Dash that he was exploring the possibility of creating a full-length feature film based on the plot, theme, setting, storyline, and overall essence of The Family.

21. Jones presented Defendant Dash with a projected budget for creating the film as well as, sales projections in anticipation of the success of such as project. Jones further advised Defendant Dash that if he read The Family, he would be convinced that The Family could become a successful full-length feature film.

22. At the conclusion of the 1st Meeting, Jones handed Defendant Dash two copies of The Family, advised him to give one copy to Defendant Carter, and the parties agreed to meet after Labor Day in 1998.

23. Upon information and belief, shortly after the 1st Meeting but prior to Labor Day in 1998, Defendant Dash contacted Jones and advised him that he read The Family and as a result thereof, he and Defendant Carter would like to have a meeting to discuss The Family and the possibility of creating a full-length feature film based on its contents (the "2nd Meeting").

24. Present at the 2nd Meeting were Jones, Defendants Dash and Carter and upon information and belief, non-parties Kareem "Biggs" Burke, Carline Balan and Kyambo "Hip Hop" Joshua, and upon further information and belief, all of the aforementioned attendees were either principles and/or former employees of Defendant Roc-A-Fella.

25. During the 2nd Meeting, Defendant Dash reiterated to Jones that he had in fact read The Family in "a few hours" and that he "loved it" and asked whether The Family was based in "fact or fiction". Moreover, Defendant Dash advised Jones that he believed they could "do business".

26.   Jones advised Defendant Dash that he solely researched and independently wrote The Family and therefore, The Family was based solely in fiction.

27.   Upon information and belief, during the 2nd Meeting, Jones asked Defendant Carter whether he read The Family to which Defendant Carter replied, "Yeah".

28.   Upon information and belief, during the 2nd Meeting, Defendant Dash asked Jones whether he would be interested in selling the rights to The Family and if so, did he have an offer in mind.  Jones responded in the affirmative to Defendant Dash, requesting Five Hundred Thousand ($500,000.00) Dollars as consideration for the rights in and to The Family.

29.   Upon information and belief, Defendant Carter replied to Jones's offer by advising Jones that, "We don't have that kind of money right now" and Defendant Dash countered Jones's offer with an offer of Fifty Thousand ($50,000.00) Dollars.

30.   Upon information and belief, although Defendant Dash made the counter offer of Fifty Thousand ($50,000.00) Dollars to Jones's initial offer of Five Hundred Thousand ($500,000.00) Dollars, Jones responded to Defendant Carter by stating, "Well then I guess you're not telling the truth about having money on your records" after which Jones advised both, Defendants Dash and Carter that, "Fifty Thousand ($50,000.00) Dollars is not going to do it."

31.   Upon information and belief, Defendant Dash advised Jones that the parties "could work this out" and Defendant Dash further advised Jones to "let me get back to ya" [sic].  After the 2nd Meeting the parties never communicated again regarding The Family or any other matters.

32.    In or about August 1999, approximately one (1) year after the aforementioned

Meetings, The Family was published and commercially released in book form, *see*

Exhibit B.

33.    Upon information and belief and according to the records contained in the U.S.

Copyright office, State Property/Lion's Gate Films and a [sic] Roc-A-Fella Films

present a film by Abdul Malik Abbot was published on January 18, 2002 and granted

Copyright Registration number PA-1-148-571 on June 23, 2003 to which Defendant

Lion's Gate is the claimant and Get Down Productions, Inc. is the alleged author, a copy

of which is annexed hereto as Exhibit H.

34.    On or about January 18, 2002, State Property, a full-length feature film was theatrically

released in sixty-one (61) theaters across the United States by Defendant Lion's Gate,

grossed approximately Four Hundred Fifty Two Thousand Twenty Eight ($452,028)

Dollars in its opening weekend and grossed a total of Two Million One Hundred Six

Thousand, Eight Hundred Thirty Eight ($2,106,838) Dollars.

35.    Defendants secured neither a license nor consent or authorization from Jones, yet

Defendants willingly and knowingly copied and appropriated Jones's copyrightable

expression from The Family in writing, filming, editing and otherwise creating State

Property.

36.    Moreover, State Property contains probative and substantial similarities to The Family

as well as, the exact same plot, setting, theme, and overall essence of The Family, to

which Defendants Dash and Carter had access, thereby infringing Jones's valuable

copyright in and to The Family.

37.   Upon information and belief and according to the records contained in the U.S.
      Copyright office, State Property: No. 2 was registered on April 5, 2005 and granted
      Copyright Registration number PAu-3-004-722, to which Defendant Lion's Gate is the
      claimant and Philly Productions, Inc. is the alleged author, a copy of which is annexed
      hereto as Exhibit I.

38.   Upon information and belief, on or about April 13, 2005, State Property 2, a full-length
      feature film was theatrically released in two hundred two (202) theaters across the
      United States by Defendant Lion's Gate, grossed Seven Hundred Fifty Six Thousand,
      Nine Hundred Five ($756,905) Dollars in its opening weekend and grossed a total of
      One Million Six Hundred Ninety One Seven Hundred Six ($1,691,706) Dollars.

39.   Defendants secured a neither license nor consent or authorization from Jones, yet
      Defendants willingly and knowingly created a continuation of State Property, the
      contents of which were copied from, and based wholly on, The Family.

40.   Moreover, State Property 2 is the continuation of State Property, which contains
      probative and substantial similarities to The Family as well as, the same plot, setting,
      theme, and overall essence of The Family, to which Defendants Dash and Carter had
      access and upon information and belief, confirmed to Jones that they indeed read,
      thereby infringing Jones's valuable copyright in and to The Family.

41.   Furthermore, with neither Jones's consent nor authorization or permission, Defendants
      continue to advertise, promote, sell, and rent and cause the advertisement, promotion,
      sale and rental of State Property and State Property 2 in several retail outlets including
      but not limited to, Best Buy, Blockbuster Video, Hollywood Video, Net-Flix and over

the Internet, all of which constitutes the ongoing infringement of Jones's valuable copyright in and to The Family. *See* Exhibit A.

42. The natural, probable and foreseeable result of Defendants' wrongful, willful and egregious conduct has and will continue to deprive Jones of the benefits and revenue associated with developing and exploiting The Family in other mediums such as the motion picture and television industries.

43. Jones has lost and will continue to lose substantial revenue and sustain damages as a result of Defendants' wrongful advertising, marketing, promotion, distribution, display, sale, and rental of State Property and State Property 2 as well as, opportunities to exploit The Family in other mediums such as the motion picture and television industries.

44. Defendants' wrongful, willful and egregious conduct has deprived and will continue to deprive Jones of opportunities for expanding the goodwill associated with The Family.

45. Unless enjoined by this Court, Defendants will continue their course of conduct and wrongfully, willfully and knowingly infringe upon, sell, rent and otherwise profit from The Family, and a direct and proximate result of such conduct, Jones will continue to suffer irreparable damage and will contain to sustain lost profits.

46. Jones has no adequate remedy at law to redress all of the injuries that Defendants have caused by their egregious, willful and intentional conduct and therefore Jones has and will continue to suffer irreparable damage and sustain lost profits unless Defendants' conduct are permanently enjoined by this Court.

## THE FAMILY and STATE PROPERTY:
## A COMPREHENSIVE COMPARISON

47.  *The Family* begins with its protagonist, Anthony, narrating a chronological, detailed story of how he and his crew, labeled the "NRP", reaches the pinnacle of the Philadelphia drug trade by taking over rival drug crews and mini-organizations by controlling the best quality and largest quantity of cocaine.  Anthony is speaking of past events from a prison cell.

48.  *State Property* opens with its protagonist, Beans, narrating a chronological, detailed story of how he and his crew, labeled the "ABM", reached the pinnacle of the Philadelphia drug trade by taking over rival drug crews and mini-organizations by brute force and murder.  The climax of State Property informs the viewers that Beans was also narrating from a prison cell.

49.  Relatively early in *The Family,* Anthony introduces the readers to his most trusted associate and best friend, Mark and shortly thereafter the other two members of his crew, Dante and Shawn, the four of which are the foundation of the "NRP".

50.  In *State Property,* Beans introduces the viewers to Baby Boy, to whom he refers as his "right hand", as well as the remaining two members of the foundation of the "ABM", Blizz and D-Nice, thus also having a four member foundation.

51.  In *The Family*, each member plays a specific role in the "NRP" organization: Anthony is the leader and Mark is Anthony's "right hand" and the "muscle", while Dante and Shawn play supporting roles such as controlling and organizing the "NRP" street workers and purchasing firearms.

52.  In *State Property*, each member also plays a specific role in the "ABM" organization: Beans is the leader and Baby Boy is his "right hand", Blizz is the "muscle" and D-Nice

controls and organizes "ABM" street workers along with his partner P-Nut (who was recruited after the "ABM" was formed).

53.     In *The Family*, Anthony and Mark discuss the idea of selling cocaine in order to make large financial gains, but they both realize that they lack sufficient funds to purchase a relevant amount of cocaine.  Shortly thereafter, the foundation of the NRP meet at the "After Midnight" club in order to discuss their ultimate goal of "taking over" the city of Philadelphia by controlling the city's drug trade.

54.     In *State Property*, while sitting in an after hours club, Beans is complaining to Baby Boy about being broke and his desire for a large home, and that they need to come up with a large amount of purchase money in order to buy enough cocaine to take over the city of Philadelphia by controlling the city's drug trade.

55.     In *The Family*, the "NRP" decided their ultimate goal would be to eventually have the rival drug dealers and mini-organizations either working for them or being supplied by them.  Moreover, the motto associated with Anthony and his "NRP" crew was to either *"Be good or be gone."*

56.     In *State Property,* after realizing the ultimate goal of the "ABM" crew and murdering a rival drug dealer named "Futch", Beans made it known that the motto associated with him and his ABM crew was to either *"Get down or lay down".*

57.     In *The Family*, the "NRP" crew initially received cocaine from their connect, "Vinny", but they soon realized that he would not be able to satisfy their demand.  Therefore, they eventually "cut out the middle man" and dealt directly with June and his crew of Colombians that had a base of operations in Miami Beach, Florida, to which they often traveled in order to purchase several kilograms of cocaine on each trip.

58.     In *State Property*, Beans and Baby Boy realized that in order to get a larger quantity and better quality of cocaine at more competitive prices, they would eventually have to "cut out the middle man".   Therefore, they traveled to Miami Beach, Florida to meet the new connect, "Mario" and his crew of Columbians in order to purchase several kilograms of cocaine.

59.     In *The Family*, while doing the deal in Miami Beach, Mark told Anthony that the cocaine they were getting was close to "90 percent pure."

60.     In *State Property,* while in Miami Beach, after testing the cocaine that they were purchasing, Mario looked at Beans and Baby Boy and stated in part, "See, es puro" (it's pure).

61.     In *The Family,* Anthony disclosed to Mark his feelings of discomfort with the new connect in Miami Beach because not only did they "cut out the middle man", but they did not understand the Spanish being spoken by the cocaine suppliers.

62.     In *State Property,* Beans was extremely uncomfortable while in Miami Beach and expressed this to Baby Boy stating in part, "I don't trust these Spanish speaking Gwala Gwalas" ... "We just cut out the middle man".

63.     Throughout the plot of *The Family*, although Anthony often speaks of the healthy relationship he desires with his girlfriend Lauren and their daughter Shatora, his actions prove otherwise as he almost completely ignores the two in favor of his business and another woman, Kimmy.

64.     Throughout the plot of *State Property,* Beans often speaks of the healthy relationship he has with his girlfriend Aisha and alleges that he would do anything for his unnamed

daughter; however, shortly after his daughter's fifth birthday party, he appears to completely ignore his daughter and Aisha in favor of his business and the "ABM" crew.

65.    In *The Family,* after purchasing the large shipments of cocaine from Miami Beach, the "NRP" crew members give a description of the manner in which they will take over city of Philadelphia, including giving detailed descriptions of which section of the city is controlled by which member of the "NRP" crew.

66.    In *State Property*, after purchasing the large shipments of cocaine from Miami Beach, Beans gives a detailed description of the manner in which the "ABM" crew was taking over the city of Philadelphia, including detailed descriptions of which section of the city is controlled by which member of the "ABM" crew, stating in part, "We [sic] taking over the city of Philly like John Street".

67.    In *The Family*, Anthony describes the ability to "enjoy the fruits of our labor", referring to the hard work put in on the streets of Philadelphia by the "NRP" crew.

68.    In *State Property,* while having a meeting with the members of his "ABM" crew and prior to rewarding them with women and jewelry, Beans describes the hard work put in on the streets of Philadelphia and that it is time to "enjoy the fruits of our f***ing labor".

69.    In *The Family*, the "NRP" crew shopped for diamond rings that they ordered from "this Jewish Jeweler", that were inscribed with the initials "NRP", to signify their unity and success.

70.    In *State Property*, Beans awarded himself and the members of the "ABM" crew that were "down from day one" with diamond rings that they purchased from "Eli" played

by Jacob Arabo a/k/a Jacob the Jeweler, that were inscribed with the initials "ABM" to signify their unity and success.

71.    In *The Family*, while pregnant with their daughter, Anthony's girlfriend advises him that she cannot stay in her parent's home any longer, thus alerting the reader that Anthony needed to purchase a home for himself and his family.

72.    In *State Property*, while complaining to Baby Boy, Beans refers to having to sneak around his girlfriend's parent's home because they do not have a home of their own, thus expressing to the viewer that he desperately needed to purchase a home for himself and his girlfriend.

73.    In *The Family*, the "NRP" crew dealt violently with rival drug organizations that were robbing their dealers on the street corners as well as, robbing their "stash houses."

74.    In *State Property*, the "ABM" crew robbed rival drug dealers on the street corners as well as, rival dealers delivering to drugs to their "stash houses".

75.    In *The Family*, the men devised a plan to retaliate on a rival drug dealer named Jabril by using a woman that was romantically involved with a member of the "NRP" in order to set Jabril up to be murdered.

76.    In *State Property,* the men devised a plan to set up Sharef, a rival drug dealer by using a woman that became romantically involved with a member of the "ABM" crew, who in turn set up Sharef to be murdered.

77.    In *The Family*, since the "NRP" crew was making so much money and they figuratively took over the city of Philadelphia, they were forced to bribe the local police departments.

78. In *State Property*, since the "ABM" allegedly took over every section of the city of Philadelphia, Baby Boy was seen making bribery payments to the local police patrolling those sections.

79. In *The Family*, Shawn, a founding member of the "NRP" crew, dealt with a heroin dealer in order to make more money, and this was viewed by remaining members as not only being greedy, but also as being disloyal to the "NRP" crew. Ultimately, Shawn was set up by his own crew and murdered.

80. In *State Property*, Blizz, a founding member of the "ABM" crew, complained that Beans was the only member making "any real money", and this was viewed by Beans and Baby Boy as not only being greedy, but also as being disloyal to the "ABM" crew. Ultimately, Blizz was set up by Beans and killed in a shoot out with police.

81. In *The Family*, in reference to Shawn's obvious greed, a founding member of the "NRP" crew blatantly stated, "We are going to have to remove the weak link to tighten the chain."

82. In *State Property*, in reference to Blizz's obvious envy and greed, Beans blatantly stated, "We can't have no [sic] weak links in this family" ...

83. In *The Family*, Anthony's girlfriend begged him to "get out of the fast life" because she had a dream that he was killed. Hence, although she was aware that Anthony was a drug dealer and she accepted the perks of such a lifestyle, witnessing a murder in her dreams caused her to beg him to stop dealing drugs.

84. In *State Property,* Beans' girlfriend Aisha witnessed her friend Tonya murdered by a rival drug crew led by "Boss Dame". Although she was well aware that Beans and his "ABM" crew were drug dealers and she accepted the home, jewelry and other perks,

witnessing a murder caused her to go into a state of shock wherein she begged Beans to stop dealing drugs.

85.    In *The Family*, Anthony owned several automobile detailing shops across the city as well as, in Camden, Trenton and Newark.

86.    In *State Property*, Ceaser was a character that owned a detailing shop in Philadelphia and it was there that Beans shot him several times. Ceaser wound up being the character that was to ultimately testify against Beans putting him away for life.

## AS AND FOR A FIRSTS CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT
## 17 U.S.C. § 501, et. seq.

87.    Plaintiff reaffirms, realleges, repeats and incorporates by reference each and every allegation of this Complaint as set forth in Paragraphs 1 through 86 of the Complaint as fully set forth herein.

88.    Upon information and belief, Defendants have, by the actions alleged above, willfully and with knowledge infringed and will continue to willfully infringe Jones's valuable copyright in and to The Family by continuing to advertise, promote, offer for sale, sell, offer for rental, and rent State Property and State Property 2, which contain probative and substantial similarities to The Family, in commerce through theatres and several retail outlets including but not limited to, Best Buy, Blockbuster Video, Hollywood Video, Net-Flix and over the Internet.

89.    In creating, advertising, promoting, distributing, selling, and renting State Property and State Property 2, Defendants knowingly, willfully and unlawfully copied The Family, and Defendants knew that their unlawful copying and unlawful use of the plot, setting,

characters, subject matter and overall expression of ideas contained within The Family constituted willful copyright infringement.

90.  As a direct and proximate result of the foregoing acts of Defendants, Jones has been damaged and has suffered and will continue to suffer immediate and irreparable injury.

91.  Jones is entitled to recover damages he sustained and will continue to sustain, and a share of Defendants' profits, gains and advantages as a result of the acts of willful infringement as alleged above as well as, attorneys' fees.  At the present, the amount of such damages, profits, gains, and advantages cannot be fully ascertained by Jones but are believed to exceed Ten Million ($10,000,000) Dollars.

92.  Jones has no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION
## UNFAIR COMPETITION IN VIOLATION OF
## THE LANHAM ACT (15 U.S.C §1125 et seq.)

93.  Plaintiff reaffirms, realleges, repeats and incorporates by reference each and every allegation of this Complaint as set forth in Paragraphs 1 through 92 of the Complaint as fully set forth herein.

94.  Defendants are falsely, willfully, knowingly, and intentionally misrepresenting and falsely designating to the general public, the origin and source of the expression of ideas, characters, plot, setting, storyline, and overall essence of State Property and State Property 2, so as to create a likelihood of confusion by the public as to the source and sponsorship of State Property and State Property 2.

95.  By reason of Defendants' actions, Plaintiff has been seriously and irreparably damaged, including monetary damages and unless Defendants are restrained, Plaintiff will continue to be so damaged.

96.    Plaintiff is entitled to and therefore, requests a permanent injunction restraining

Defendants and their respective officers, agents and employees, and all persons acting in

concert with them, from engaging in any further acts in violation of 15 U.S.C. §1125.

97.    Plaintiff is further entitled to recover from Defendants, damages he sustained and will

continue to sustain, trebled pursuant to 15 U.S.C. §1117(a), and any gains, profits and

direct or indirect advantages obtained by Defendants as a result of the acts of violation

of 15 U.S.C. §1125.  At the present, the amount of such damages, profits, gains, and

advantages cannot be fully ascertained by Jones but are believed to exceed Five Million

($5,000,000) Dollars.

98.    Plaintiff has no adequate remedy at law.

## AS AND FOR A THIRD CAUSE OF ACTION
## COMMON LAW MISAPPROPRIATION
### (As to Defendants Dash and Carter)

99.    Plaintiff reaffirms, realleges, repeats and incorporates by reference each and every

allegation of this Complaint as set forth in Paragraphs 1 through 98 of the Complaint as

fully set forth herein.

100.    Jones expended considerable time and expense in creating the characters, plot, setting,

storyline, and overall essence of The Family.  This undertaking required considerable

dedication, skill and experience as a writer and was based in part on his personal

observations of aspects of the Philadelphia criminal sub-culture upon which The Family

was based.

101.    Upon information and belief, Defendants Dash and Carter used Jones's collective

efforts, as evinced in The Family, as the sole source of State Property.

102.    Defendants Dash and Carter's actions essentially destroyed Jones's efforts in successfully creating or successfully causing the creations of a full-length feature film based on The Family.

103.    Upon information and belief, prior to the release of State Property, various media entities were interested in adapting The Family into a film.  However, subsequent to State Property's release, Jones was told, "The story is good but it sounds like State Property".  Therefore, since Defendants Dash and Carter wrongfully misappropriated The Family, no one will independently create a film version of The Family.

104.    As a direct and proximate result of Defendants Dash and Carter's misappropriation of The Family, they gained an advantage over Jones because they simply copied copyrightable expressions of The Family, without bearing the burden of writing, researching, developing, and witnessing the subculture of Philadelphia upon which The Family is based.

105.    As a direct and proximate result of Defendants Dash and Carter's misappropriation of The Family, Jones has suffered significant commercial monetary damages.

106.    Defendants Dash and Carter's misappropriation of Jones's work and sole creation in The Family was done intentionally, maliciously, and with wanton and willful disregard for Jones's valuable copyrights.  In that regard, Jones is entitled to treble damages in an amount to be determined by the trier of fact.

107.    Plaintiff has no adequate remedy at law.

## AS AND FOR A FOURTH CAUSE OF ACTION
## ACCOUNTING

108.    Plaintiff reaffirms, realleges, repeats and incorporates by reference each and every allegation of this Complaint as set forth in Paragraphs 1 through 107 of the Complaint as fully set forth herein.

109.    Jones is entitled, pursuant to 17 U.S.C. §504 and 15 U.S.C. §1117, to recover any and all profits of Defendants that are attributable to their acts of willful infringement.

110.    Jones is entitled, pursuant to 17 U.S.C. §504 and 15 U.S.C. §1117, to actual damages or statutory damages sustained by virtue of Defendants' acts of willful infringement.

111.    The specific amount of damages due to Jones is unknown and cannot be ascertained without a detailed accounting by all of Defendants of the precise number of units of infringing copies of State Property and State Property 2 offered for and actually distributed by Defendants.

112.    Jones has no adequate remedy at law.


**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against all Defendants in the following:

1.      On the First Cause of Action:

(a)     That Defendants have willfully infringed Jones's copyrights in and to the Family, in violation of 17 U.S.C. §501;

(b)     That Defendants, their agents and servants, be enjoined during the pendency of this action and permanently from infringing, or contributing to the infringement of, Plaintiff's copyrights in any manner, and from copying, selling, marketing, distributing, displaying or otherwise exploiting infringing copies or reproductions of State Property and State Property 2, and that Defendants be

required to deliver up to Plaintiff all copies and other materials used in the making of infringing

copies or reproductions of State Property and State Property 2;

(c)     That Defendants be required to pay Plaintiff pursuant to 17 U.S.C. §504 et seq:

(i)     Such damages as Plaintiff has sustained in consequence of Defendants' willful infringement

of Jones's copyrights in and to The Family, including but limited to the injury to the value of

Plaintiff's copyrights, and all other damages sustained by Plaintiff, and to account for a pay to

Plaintiff all gains, direct and indirect profits and advantages derived by Defendants by reason of

their wanton and willful infringements, in an amount of at least $10,000,000; or

(ii)     At Plaintiff's election as to any or all of the copyrights that have been infringed, statutory *in*

*lieu* damages of at least $150,000 per copyright infringed;

2.     On the Second Cause of Action:

(a)     The Defendants, their agents and servants, be enjoined during the pendency of this action

and permanently from their continued violation of the Lanham Act;

(b)     That Defendants be required to pay Plaintiff such damages as Plaintiff has sustained in

consequence of Defendants' violations of the Lanham Act, those damages to be trebled, and to

account for and pay to Plaintiff all gains, direct and indirect profits and advantages derived by

reason of their wrongful conduct, in the amount of at least $5,000,000;

3.     On the Third Cause of Action against Defendants Dash and Carter:

(a)     That an order to be entered against Defendants Dash and Carter awarding Jones actual

damages in an amount to be determined by the trier of fact;

(b)     That an order be entered awarding Jones profits of Defendants Dash and Carter in an

amount to be determined by the trier of fact;

(c)    That an order be entered awarding Jones treble damages in an amount to be determined by

the trier to fact;

4.    On the Fourth Cause of Action pursuant to 17 U.S.C. §504 and 15 U.S.C. § 1117:

(a)    That an order be entered against Defendants in favor of Plaintiff to recover any and all of

Defendants' profits that are attributable to his act of willful infringement;

(b)    That an order be entered against Defendants in favor of Plaintiff to actual or statutory

damages sustained by virtue of Defendants' acts of willful infringement;

5.    That the costs of this Action be awarded to Plaintiff;

6.    That this is an exceptional case and that Plaintiffs be awarded their reasonable attorney fees;

and

7.    That this Court grant such other and further relief as it shall deem just.


Respectfully submitted,
DUNLOP & ASSOCIATES, P.C.

By: _____
Victor A. Dunlop (VAD-8571)

DATED:    Brooklyn, New York          Attorneys for Plaintiff
          April 17, 2007              Antonne M. Jones
                                      Office & P.O. Address
                                      55 Washington Street, Suite 451
                                      Brooklyn, New York 11201
                                      (718) 403-9261 Telephone
                                      (614) 445-9261 Facsimile

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK        )
                               ) SS:
COUNTY OF NEW YORK     )

     ANOTNNE M. JONES, being duly sworn, deposes and says that he is the plaintiff in the within entitled action; that he has read the foregoing COMPLAINT and that he knows the contents thereof, and that the same are true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.

_____
ANTONNE M. JONES

Sworn to before me this _17th_
Day of ___April___, 2007

_____
Notary Public

CRAIG DAVIDOWITZ
Notary Public, State of New York
No. 02DA4988463
Qualified in New York County
Commission Expires _12/11/05_

Exhibit A



| | WEEKLY AD SHOPPER | REBATE CENTER | GIFT CARD MY ACCOUNT CUSTOMER SERVICE | CART |
| | | | | 0 Items |

**ELECTRONICS** ▼ | **CAMERAS & CAMCORDERS** ▼ | **COMPUTERS** ▼ | **MUSIC, MOVIES GAMES & TOYS** ▼ | **HOME & APPLIANCES** ▼ | **PHONES & COMMUNICATIONS** ▼ | **OFFICE PRODUCTS** ▼ | **GIFT IDEAS**

SEARCH FOR | Keyword or Item # | IN | All Categories | GO | **Welcome.** Please <u>create an account</u> or <u>Sign in</u>.

---

**9** items found for **"State Property"** in **All Categories**

### Narrow your results by:

**Special Offers**

<u>Free Shipping</u> | (1)

**Learn More**

<u>The Independent Sound You're Searching For...</u>

---

**Categories**



<u>Music</u> (6)          <u>Movies</u> (2)          <u>Computers</u> (1)

**See all 9 items at once**

---

**MOVIES** | **2 items found for "State Property"**


**State Property 2 - Widescreen Subtitle Dolby**
SKU: 7246009
Format: **DVD**
List Price: $14.98
**Our Price: $12.99**


**State Property - Subtitle**
SKU: 4534766
Format: **DVD**
List Price: $14.98
**Our Price: $10.99**

» **See all 2 matches in Movies**

---

**MUSIC** | **6 items found for "State Property"**


**State Property Presents The Chain... [PA]**
State Property
SKU: 5745045
Format: **CD**
**Our Price: $13.99**


**State Property [PA] - Original Soundtrack**
Original Soundtrack
SKU: 4483491
Format: **CD**
**Our Price: $14.99**


**State Property [Edited] - Edited Original Soundtrack**
Original Soundtrack
SKU: 4504398
Format: **CD**
**Our Price: $14.99**

» **See all 6 matches in Music**

---

**COMPUTERS** | **1 items found for "State Property"**          See All Subcategories ▼


**Quicken WillMaker Plus 2007**
SKU: 7974052
Platform: **Windows**
**Our Price: $49.99**

» **See all 1 matches in Computers**

---

**Need Help?**

<u>Legal Notices</u>

<u>Privacy Policy</u>

---

**New Search**





# TURNER CLASSIC MOVIES

SUGGEST A MOVIE | MOVIE MORLOCKS

SCHEDULE | THIS MONTH | GAMES, TRIVIA & FUN STUFF | MULTIMEDIA | COMMUNITY | MOVIE NEWS | SHOPPING

VIDEOS | TRIVIA | PHOTOS | MONTH SCHEDULE | WALLPAPER | DISCOUNT DVDs | MESSAGE BOARDS | POLL | NOW PLAYING GUIDE

SEARCH BY ☑ VHS ☑ DVD    BY NAME

HOME | DVD | VHS | NEW RELEASE | OUT OF PRINT | APPAREL | GIFT ITEMS | BOOKS

SHOPPING CART | MY ACCOUNT | ORDER DIRECTLY FROM OUR PRINTED CATALOG

## Run The Wild Fields [DVD] (2000)
A woman, left to care for her daughter and family farm on her own when her husband is declared missing in action during World War II, finds solace and love with a handsome drifter who works for her in this tender drama. Joanne Whalley, Sean Patrick Flanery, Cotter Smith. 101 min. Standard; Soundtracks: English Dolby Digital Surround, Spanish Dolby Digital Surround; photo gallery; filmographies.

**Category:** Drama    **Director:** Paul A. Kaufman

**Cast:** Sean Patrick Flanery, Paulette Sinclair, Cotter Smith, Alexa Vega

*Rated: NR*  ▢  *Color*  #D28790

*Was $14.99* Sale! $14.24 DVD  ADD TO ORDER

## Also featured in our 800-page catalog...

## Othello [DVD] (2001)
Screenwriter Andrew Davies ("Bridget Jones's Diary") boldly updates Shakespeare's timeless drama of jealousy, passion and mistrust, transferring the action to contemporary London. There, newly appointed police commissioner John Othello (Eamonn Walker) is the object of envious colleague Ben Jago's (Christopher Eccleston) scheme to destroy him by making Othello suspect his wife Dessie (Keeley Hawes) is unfaithful. Joss Ackland also stars. 96 min. Standard; Soundtrack: English Dolby Digital stereo; filmographies.

**Category:** Drama    **Director:** Geoffrey Sax

**Cast:** Joss Ackland, Richard Coyle, Christopher Eccleston, Keeley Hawes, Bill Paterson, Eamonn Walker

**Also Available:** VHS

*Rated: NR*  *Color*  #D28565

*Was $19.99* Sale! $17.99 DVD  ADD TO ORDER

## State Property [DVD] (2001)
A small-time Philly street hood (Beanie Siegel) sets out to form his own posse and make a name for himself in the drug "business," but discovers that the life he's made for himself comes with a heavy price, in this intense urban gangsta drama. Jay-Z, Damon Dash and Sundy Carter also star. 93 min. Standard; Soundtrack: English Dolby Digital stereo; Subtitles: English, Spanish; theatrical trailer; deleted scenes; music videos; behind-the-scenes footage.

**Category:** Drama    **Director:** Abdul Malik Abbott

**Cast:** Memphis Bleek, Damon Dash, Beanie Sigel

*Rated: R*  *Color*  #D28646

*Was $14.99* Sale! $14.24 DVD  ADD TO ORDER

## State Property 2 [DVD] (2005)
While incarcerated, hardcore gangsta Beans attempts to maintain his Philadelphia-based criminal empire while his crew goes on without him. Deciding to team with a brilliant fellow inmate, he hatches a plan that will put him back on top. But when he and his new partner finally get back on the streets, Beans learns a lesson in betrayal while the City of Brotherly Love prepares for a bloodbath. Beanie Sigel, Victor N.O.R.E. Santiago, Damon Dash (who also directed and co-wrote) star; with cameos by Mariah Carey, Dirt McGirt (Ol' Dirty Bastard). 95 min. Widescreen; Soundtracks: English Dolby Digital 5.1, Dolby Digital stereo; Subtitles: English, Spanish; audio commentary; featurette; bonus footage; music videos.

**Category:** Drama    **Director:** Damon Dash

**Cast:** Loon

**Also Available:** VHS

*Rated: R*  ▢  *Color*  #D77287

### Browse by category
Gift Items
Apparel
Books
New Releases
Action & Adventure
Comedy
Cult
Documentary
Drama
Family/Animation
Family/Live Action
Foreign
Historical & War
Horror
Martial Arts
Musicals
Mystery & Suspense
Religious
Science Fiction &
Fantasy
Silents
Westerns

SHOPPING NEWS
CLICK TO *Join Now!*
Get TCM's bi-monthly newsletter to stay up-to-date on all the latest shopping news.

BOOKS



**State Property** 2002 (R)



Eager to achieve the American Dream, a broke gangsta and his crew kick their hustling game into overdrive. The money comes fast and free until they begin doing business in an even more powerful rival gang's territory.

**Starring:** Beanie Sigel, Memphis Bleek... View Full Credits
**Director:** Abdul Malik Abbott



Rated R Strong violence and sexuality, nonstop language, and drug content

Suspense, Drama (88 Minutes)

**May be available for rent at Hollywood Video**
Find a store near you.

COMMUNITY RATING

 ADD TO WISH LIST

## Credits

### Cast

| | | |
|---|---|---|
| Beanie Sigel | Oschino | Christopher 'Young Chris' Ries |
| Jay-Z | Sundy Carter | Damon Dash |
| Hanif 'Young Neef' Muhammed | Memphis Bleek | |

### Director
Abdul Malik Abbott

 **Buy Related Products**

| Description: | | Format: | |
|---|---|---|---|
| State Property (2002) | | DVD | Buy Now |
| State Property (2002)[CC] | | VHS | Buy Now |
| State Property (2002)(Spanish Subtitles) | | VHS | Buy Now |

## DVD Details

**State Property (2002)**

| | |
|---|---|
| Theatrical Trailer | |
| Viewing Format | Full Frame |
| Subtitles | Spanish |

Exhibit B



# THE FAMILY

THE COLOMBIANS BACKED IT...
THE BLACKS CONTROLLED IT...

THE GOVERNMENT FEARED IT...

A PHILADELPHIA

MOB STORY

## ANTONNE M. JONES