Tom J. Ferber (tferber@pryorcashman.com)
Mark A. Tamoshunas (mtamoshunas@pryorcashman.com)
Jordan S. Paul (jpaul@pryorcashman.com) (*admission pending*)
PRYOR CASHMAN LLP
410 Park Avenue
New York, NY 10022

Attorneys for Defendant Lions Gate Films, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ANTONNE M. JONES,

                               Plaintiff,                07 Civ. 3648 (KNF)

       -against-

ROC-A-FELLA FILMS, INC., LIONS GATE
FILMS, INC., DAMON DASH and
SHAWN CARTER,

                             Defendants.
-------------------------------------------------------------------X

## DEFENDANT LIONS GATE FILMS, INC.'S REPLY MEMORANDUM
## OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ....................................................................................................................... 3

    I.   THERE IS NO SUBSTANTIAL SIMILARITY OF PROTECTIBLE
        EXPRESSION BETWEEN "THE FAMILY" AND *STATE PROPERTY* .......................... 3

        A.  The Purchase of Cocaine from Colombian Suppliers in
             "The Family" and *State Property* is Based on Identical Purchases
             Made by the JBM and Concerns an Unprotectible *Scene a Faire* ............................ 4

        B.  The Alleged Similarity Concerning a Tension Between the Love Interest
             and Protagonist in Each Work Is Both Mischaracterized and Unprotectible ...................... 5

        C.  The Leader of the Drug Gang Moving
             to the Suburbs is Nothing More Than an Unprotectible Idea ............................... 6

        D.  The Idea of a Disloyal Gang Member Being Killed is Not Protectible ............................... 7

        E.  There is Nothing Protectible in the Use of a
             Woman in the Killing of a Rival Drug Dealer ............................................................ 8

    II.  PLAINTIFF'S EXPERT REPORT IS IRRELEVANT
         TO THE DETERMINATION OF SUBSTANTIAL SIMILARITY ......................................... 9

CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

__CASES__                                                                                      __PAGE(s)__

A Slice of Pie Products, LLC v. Wayans Brothers Entertainment,
    487 F. Supp. 2d 41 (D. Conn. 2007) ................................................................. 6

Arnstein v. Porter,
    154 F.2d 464 (2d Cir. 1946) ....................................................................... 1

Boisson v. Banian, Ltd.,
    273 F.3d 262 (2d Cir. 2001) ....................................................................... 8

Brown v. Perdue,
    No. 04 Civ. 7417 (GBD), 2005 WL 1863673 (S.D.N.Y. Aug. 4, 2005),
    aff'd, 177 Fed. Appx. 121 (2d Cir. 2006) ................................................ 9

Computer Associates International, Inc. v. Altai, Inc.,
    982 F.2d 693 (2d Cir. 1992) ....................................................................... 9

Conan Properties, Inc. v. Mattel, Inc.,
    712 F. Supp. 353 (S.D.N.Y. 1989) ........................................................... 1

Dastar Corp. v. Twentieth Century Fox Film Corp.,
    539 U.S. 23 (2003) ..................................................................................... 2

Davis v. United Artists, Inc.,
    547 F. Supp. 722 (S.D.N.Y. 1982) ...................................................... 3, 9

Denker v. Uhry,
    820 F. Supp. 722 (S.D.N.Y. 1992) ...................................................... 2, 9

Flaherty v. Filardi,
    388 F. Supp. 2d 274 (S.D.N.Y. 2005) ................................................. 3, 6

Folio Impressions, Inc. v. Byer California,
    937 F.2d 759 (2d Cir. 1991) ................................................................ 3, 8

Fuld v. National Broad. Co.,
    390 F. Supp. 877 (S.D.N.Y. 1975) ...................................................... 4, 5

Hogan v. DC Comics,
    48 F. Supp. 2d 298 (S.D.N.Y. 1999) ................................................... 3, 9

Identity Arts v. Best Buy Enterprise Services Inc.,
    No. C 05-4656 (PJH), 2006 U.S. Dist. LEXIS 24803 (N.D. Cal. Feb. 10, 2006) .................... 10

<u>CASES</u>                                                                                                                    <u>PAGE(s)</u>

<u>Maxtone-Graham v. Burtchaell</u>,
     803 F.2d 1253 (2d Cir. 1986)..........................................................................................1

<u>Nichols v. Universal Pictures Corp.</u>,
     45 F.2d 119 (2d Cir. 1930) ...........................................................................................3

<u>Price v. Fox Entertainment Group, Inc.</u>,
     No. 05 Civ. 5259 (SAS), 2007 WL 241389 (S.D.N.Y. Jan. 27, 2007) ..........................................9

<u>Silberstein v. Fox Entertainment Group Inc.</u>,
     424 F. Supp. 2d 616 (S.D.N.Y. 2004), <u>aff'd</u>, 242 Fed. Appx. 720 (2d Cir. 2007) ......................3

<u>Smith v. Weinstein</u>,
     578 F. Supp. 1297 (S.D.N.Y.), <u>aff'd w'out op.</u>, 738 F.2d 419 (2d Cir. 1984) ............................1

<u>Walker v. Time Life Films, Inc.</u>,
     784 F.2d 44 (2d Cir. 1986) ...................................................................................3, 7, 9

<u>Williams v. Crichton</u>,
     84 F.3d 581 (2d Cir. 1996) ...........................................................................................3

## PRELIMINARY STATEMENT

"The Second Circuit has emphasized that summary judgment is meant to clear the air before trial and thereby enable a district judge to see whether any fire of substance lies beneath the parties' smoke," so that the court may dispose of meritless claims. Conan Props., Inc. v. Mattel, Inc., 712 F. Supp. 353, 356 (S.D.N.Y. 1989) (citation omitted). Plaintiff's opposition to Lions Gate's motion for summary judgment is based on pure "smoke" and/or a fundamental misapprehension of copyright law, especially in the context of summary judgment.[1]

Despite Lions Gate's express statement that it had focused its motion *only* on the question of substantial similarity of copyrightable expression – "which is addressed as a matter of law and obviates any need for the Court to address arguments concerning credibility" (Mov. Br. at 7) – Plaintiff opposes Defendants' motion by larding his papers (including eight pages of his brief) with a recitation of purported issues of fact, *none of which is germane to the Court's inquiry on the present motion* because they concern not the content of the works themselves – which is beyond dispute – but on irrelevant issues of credibility.[2]

Plaintiff then argues against the appropriateness of determining an absence of substantial similarity on summary judgment, relying on Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946) (Opp. Br. at 10). Plaintiff's second argument is equally baseless, however, as it has been a quarter century since it was determined that Arnstein "is not the present state of the law." Smith v. Weinstein, 578 F. Supp. 1297, 1302 (S.D.N.Y.), aff'd w'out op., 738 F.2d 419 (2d Cir. 1984). Accord Maxtone-Graham v. Burtchaell, 803 F.2d 1253, 1258 (2d Cir. 1986) ("The days of Arnstein v. Porter are behind

---

[1] The defined terms set forth in Lions Gate's Memorandum of Law In Support of its Motion for Summary Judgment ("Mov. Br.") are incorporated as if set forth fully herein.

[2] Notably, however, Plaintiff does not dispute that he repeatedly sought to have Anderson submit a false affidavit to the Court stating that Dash gave him a copy of "The Family" and instructed him to base a screenplay on it, even though Anderson told Plaintiff that he had *not* read the Plaintiff's book or used it in writing his screenplay. (Anderson Tr. at 110-115). Nor does Plaintiff dispute Anderson's testimony that the Plaintiff offered him five percent of any recovery he might obtain in this case in exchange for such an affidavit or that Plaintiff arranged through a friend to obtain a 60% discount on hotel rooms on many occasions in a further attempt to persuade Anderson to sign the false affidavit. (Anderson Tr. at 111-113, 128-133, 155-156, 161-162, 167-169, 192-194).

us…Although for a period of time this Circuit was reluctant to approve summary judgment in any but the most extraordinary circumstances, that trend has long since been jettisoned in favor of an approach more in keeping with the spirit of Rule 56"); see also Denker v. Uhry, 820 F. Supp. 722, 730 (S.D.N.Y. 1992) (rejecting Arnstein's summary judgment standard and granting summary judgment for defendant).

Finally, Plaintiff has implicitly acknowledged the weakness of most of the 20 points of alleged similarity which he had heretofore claimed were the heart of his case.[3] By way of just one example, Plaintiff had claimed that the use of a gang motto which reflects its goal of dominance was copied from his book (Ferber Exh. A at ¶¶ 55-56 and Exh. P at 11)[4], but the incontrovertible historical materials before the Court establish that the gang motto in *State Property* – "Get Down Or Lay Down" – was the *actual* motto used by the Junior Black Mob, the *actual* gang on which *State Property* is based. (Ferber Exhs. M at 1, N at 229).

Plaintiff's opposition brief now asks the Court to focus on just five alleged points of similarity, but his arguments in connection with those points reflect Plaintiff's fundamental misapprehension of the scope of copyright protection, as the allegedly similar *ideas* at issue in the five points are given materially dissimilar copyrightable *expression* and/or are unprotectible *scenes a faire*, so that even what are presumably Plaintiff's best points establish Defendants' entitlement to summary judgment based on decades of precedent in which copyright claims have been dismissed as a matter of law under precisely such circumstances.

---

[3] Plaintiff has also conceded that he has alleged no similarities to *State Property II*, let alone the substantial similarities of protectible expression required to sustain a copyright infringement claim. (Lions Gate's 56.1 Statement at ¶ 6; Plaintiff's 56.1 Statement at ¶ 6). Plaintiff similarly concedes that his Lanham Act claims are based on identical allegations relating to his copyright claim, which bars his Lanham Act claim, as well as its corresponding accounting claim, under the application of the Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003). Id. at 7; Mov. Br. at 23-24.
[4] Cites to "Ferber Exh. __" refer to the Declaration of Tom J. Ferber in Support of Defendant Lions Gate Films, Inc.'s Motion for Summary Judgment, dated April 15, 2008. Cites to "Ferber Reply Exh. __" refer to exhibits attached to the accompanying Reply Declaration of Tom J. Ferber in Further Support of Defendant Lions Gate Films, Inc.'s Motion For Summary Judgment dated May 30, 2008.

# ARGUMENT

## POINT I
## THERE IS NO SUBSTANTIAL SIMILARITY OF PROTECTIBLE EXPRESSION BETWEEN "THE FAMILY" AND *STATE PROPERTY*

Notwithstanding Plaintiff's claims to the contrary, it is well settled that summary judgment is appropriate where there is no substantial similarity of copyrightable expression between the two works at issue. Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996). Where a party moves for summary judgment solely on the grounds that there is no legally actionable similarity, a court will determine whether the average lay observer would find any substantial similarity between the defendant's work and the *copyrightable* components of the plaintiff's work, *excluding* all the noncopyrightable elements. Id.[5] The distillation of copyrightable components from the noncopyrightable is now commonly referred to as the "discerning ordinary observer test." Hogan v. DC Comics, 48 F. Supp. 2d 298, 309 (S.D.N.Y. 1999). Tracking the language and analysis in Williams, the discerning ordinary observer test requires the court to "extract the unprotectible elements from its consideration and ask whether the protectible elements, standing alone, are substantially similar." Id. (citation and quotations omitted)(granting summary judgment and finding no infringement of plaintiff's literary work once all the unprotectible components were disregarded); see also Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 766 (2d Cir. 1991) (granting summary judgment and finding no substantial similarity after applying the discerning ordinary observer test); Silberstein v. Fox Entm't Group Inc., 424 F. Supp. 2d 616, 631 (S.D.N.Y. 2004), aff'd, 242 Fed. Appx. 720 (2d Cir. 2007) (same).[6]

---

[5] Indeed, this Circuit has always been careful to not overextend a plaintiff's copyright protection into the realm of noncopyrighable elements, particularly those elements in the public domain. Nichols v. Universal Pictures Corp., 45 F.2d 119, 122 (2d Cir. 1930) (plaintiff's copyright did "not cover everything that might be drawn from her play; its content went to some extent into the public domain...A comedy based upon conflicts between Irish and Jews, into which the marriage of their children enters, is no more susceptible of copyright than the outline of Romeo and Juliet").
[6] It is also well settled that the Court should compare the plaintiff's copyrighted work only with the defendant's film as actually released, rather than any prior versions of the screenplay.  See Walker v. Time Life Films, Inc., 784 F.2d 44, 52 (2d Cir. 1986) ("finally released version of the film was the best and most relevant evidence on substantial similarity"); Flaherty v. Filardi, 388 F. Supp. 2d 274, 283 (S.D.N.Y. 2005) (discovery regarding screenplays would have no bearing on determination of the copyright claim because it is the film as produced that must be considered); Davis v. United Artists,

3

As set forth at length in Lions Gate's moving brief, the similarities claimed by Plaintiff are: (1) non-actionable similarities because they are based on the factual and well-known activities of the notorious Philadelphia drug gang, the Junior Black Mafia or "JBM" on which *State Property* was premised; (2) similarities concerning *scenes a faire* common to the genre of gang films, which are non-actionable as a matter of law; or (3) simply mischaracterized and are actually dissimilar in copyrightable expression when examined in context. (Ferber Exhs. M, N, O, U, V, X). Accordingly, this Circuit's discerning ordinary observer test excludes these alleged similarities from the substantial similarity analysis. Plaintiff's reliance on allegedly similar "target audience," "culture" and "genre" of the subject works to establish actionable similarity of expression (Opp. Br. at 12) is not only misplaced as a matter of law, but it also highlight's Plaintiff's fundamental misapprehension as to the meaning of protectible "expression" and "actionable similarity" under copyright law.[7]

## A.    The Purchase of Cocaine from Colombian Suppliers in "The Family" and *State Property* is Based on Identical Purchases Made by the JBM and Concerns an Unprotectible *Scene a Faire*

As set forth in Lions Gate's moving brief, the claimed similarity in drug gangs traveling from Philadelphia to Florida in order to purchase drugs from Colombians is derived from actual events involving the JBM. (Opp. Br. at 12-15; Ferber Exhs. O at p. 1; P at 11-13). Indeed, Plaintiff concedes both that it was well-known that the JBM traveled from Philadelphia to Florida to purchase drugs and that the JBM also purchased drugs from Colombians. (Lions Gate's 56.1 Statement at ¶ 19; Plaintiff's 56.1 Statement at ¶ 19). This type of alleged similarity, which "'results from the fact that both works deal with the same subject or have the same common sources,'" is not protectible. Fuld v. National

---

Inc., 547 F. Supp. 722, 724 n. 9 (S.D.N.Y. 1982) (Weinfeld, J.) (refusing to consider preliminary scripts because "the ultimate test of infringement must be the film as produced…"); Fuld v. National Broad. Co., 390 F. Supp. 877, 883 n.4 (S.D.N.Y. 1975) (same). Plaintiff's frequent citations to, and reliance on, elements in Anderson's screenplay which do not appear in the film are therefore irrelevant to this Court's legal determination. Finally, contrary to Plaintiff's claim at page 11 of his brief, Lions Gate, as a factual matter, had no creative involvement in the film. (Paseornek Tr. at 34-35).
[7] For the Court's convenience, a chart setting forth each of the claimed similarities in this action, together with an explanation as to why each alleged point of similarity is non-actionable, is also attached as Exhibit Y to the Ferber Reply Declaration.

Broad. Co., 390 F. Supp. 877, 881 (S.D.N.Y. 1975) (granting summary judgment where two works were based on gangster "Bugsy" Siegel) (quoting De Montijo v. Twentieth Century Fox Film Corp., 40 F. Supp. 133 (S.D. Cal. 1941).

Moreover, Plaintiff's argument that the characters in both works are uncomfortable because their drug suppliers speak only Spanish—which is nothing more than an unprotectible idea rather than actionable expression—misstates the source of the respective character's unease. (Opp. Br. 12-14). In "The Family," Anthony is uncomfortable because of the language barrier, while in *State Property*, Beans is nervous because of the inherent danger in the drug transaction. (Ferber Exhs. F at 20; G). Finally, the claimed similarity of dealing directly with a drug supplier to cut out the local distributors is a *scene a faire* prevalent in the genre, such as in *Scarface*, *American Gangster* and *Year of the Dragon*, to name just a few examples. (Ferber Exh. U). It is also prevalent in real gangs, in addition to the JBM, as depicted in the BET *American Gangster* documentary series in the episodes *"Freeway" Ricky Ross*, *Troy & Dino Smith*, *Rayful Edmond III* and *Frank Lucas*. Id.

**B.    The Alleged Similarity Concerning a Tension Between the Love Interest and Protagonist in Each Work Is Both Mischaracterized and Unprotectible**

This alleged similarity, asserted to be one of Plaintiff's best points, actually serves to undermine his opposition because of how compellingly it shows that Plaintiff does not distinguish between an alleged similarity in a basic, unprotectible idea and the particularized expression of that idea—at which level the two works are distinctly dissimilar. (Opp. Br. at 16-17).

Plaintiff argues that the works are similar because the love interest seeks to have the protagonist cease his drug dealing after she "witness[es]" a murder. (Opp. Br. at 16). This mischaracterizes the expression in the two works. Lauryn, the love interest in "The Family," never witnesses a murder, but instead *has a dream in which Anthony is murdered*. (Ferber Exh. F at 55). In contrast, in *State Property*, Iesha (Beans's love interest) is kidnapped and, while being held hostage, *actually sees her girlfriend (not her boyfriend, the protagonist) murdered* while the rival drug dealer is demanding

ransom from Beans over the telephone. (Ferber Exh. G). Nor is the expression of the tension between the love interest and the protagonist the same in the two works. In "The Family," Lauryn is opposed to Anthony's drug dealing from the time that she first gets involved with him and, *throughout the story*, raises concerns about Anthony's drug-dealing lifestyle. (Ferber Exh. F at 17, 32-33, 55). On the other hand, Iesha in *State Property* appears to be perfectly content with the lifestyle provided by Beans until she is personally ensnared in the web of violence arising from his attempts to take over rival dealers. Indeed, the *first* time she asks Beans to leave his criminal lifestyle is only *after* she has been kidnapped and then released. (Ferber Exh. G). In any event, as this is a standard conflict in the genre—as demonstrated by such films as *American Gangster*, *Hoodlum* and *Menace II Society*—it is an unprotectible *scene a faire*. (Ferber Exh. U); See also, e.g., A Slice of Pie Prods., LLC v. Wayans Bros. Entm't, 487 F. Supp. 2d 41, 50 (D. Conn. 2007) (claimed similarity in girlfriend/wife's character use of concept "the job or me!" is unprotectible); Flaherty v. Filardi, 388 F. Supp. 2d 274, 290 (S.D.N.Y. 2005) (claimed similarity in lawyer protagonists both dealing with failed relationship is not protectible).

**C.    The Leader of the Drug Gang Moving
to the Suburbs is Nothing More Than an Unprotectible Idea**

The concept of a leader of a drug gang moving to the suburbs is an unprotectible idea and a *scene a faire* common to many films in the genre. (Opp. Br. at 17-19). For example, in *Get Rich or Die Tryin'*, the pregnant girlfriend implores the gang leader to buy a house once the baby arrives, and in *Menace II Society*, much of the protagonist's conflict with his love interest is over her desire to have him move from Los Angeles to a new home in Atlanta. (Ferber Exh. U). Also common to the gangster genre, as demonstrated by *Scarface* and *American Gangster*, is the idea of a leader of a drug gang moving to a new ostentatious home. Id. Moreover, Plaintiff mischaracterizes the decision to buy a house in *State Property* as motivated by safety, in an attempt to have it appear more similar to his work. (Opp. Br. at 17-19). Contrary to this suggestion, in *State Property*, there is no mention of Beans being

concerned with his safety or that of his family as a motivating factor in the decision to purchase his home. (Ferber Exh. G).

### D.    The Idea of a Disloyal Gang Member Being Killed is Not Protectible

This similarity, as many alleged by Plaintiff, can be traced to actual events involving the JBM, which Plaintiff concedes was known to have internal disputes in which members were killed. (Opp. Br. at 19-20; Lions Gate's 56.1 Statement at ¶¶ 20-21; Plaintiff's 56.1 Statement at ¶¶ 20-21); see also Walker, 784 F.2d 44, 50 (2d Cir. 1986) ("killing of the two police officers actually occurred and was reported in the news media, which placed the historical fact of the murders in the public domain and beyond the scope of copyright protection") (citing Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 978-79 (2d Cir. 1980)). Moreover, the idea of a gang leader killing a fellow gang member who is perceived as disloyal concerns an unprotectible *scene a faire* exceedingly common in the gang genre, as seen in *Hoodlum* (fellow gang member killed for attempted assassination), *New Jack City* (fellow gang member killed for attempting to make a drug deal on the side and breaking the gang's code of ethics to not use drugs himself…"You cut a side deal…Yes, you did. Yes, you did, Gee.")[8], *Little Caesar* (fellow gang member killed for attempting to go to the police with information about the gang), *Untouchables* (same), *Get Rich or Die Tryin'* (fellow gang member killed for attempting to work with rival gang) and *Scarface* (gang member killed for turning state's witness). (Ferber Exh. U).

The context for the death of the gang member is also starkly different in the two works. In "The Family," Anthony seeks to avoid violence and his conscience is deeply afflicted at the prospect of killing one of his fellow members who has cut a side deal out of greed. (Ferber Exh. F at 56-61). Indeed, the final decision for killing the disloyal member is made by another member rather than by Anthony. (Ferber Exh. F at 56-57, 60). Afterwards, Anthony is so consumed by guilt that he suffers a

---

[8] Plaintiff studiously avoids acknowledging this dialogue – which establishes "G-Money's" disloyalty – in his brief, choosing instead to ignore it in his specious argument that G-Money was not killed because of disloyalty, as were the two characters in the works at issue herein. (Opp. Br. at 23-24).

nervous breakdown. (Ferber Exh. F at 61). In *State Property*, on the other hand, the member who is killed has not started a side business with another dealer, but instead has expressed jealousy and resentment towards Beans, whom he perceives as making much more money than the other gang members who do most of the work. In further contrast, Beans, a sociopath quick to resort to violence, arranged for the gang member's death in a shootout by the police immediately upon learning of his resentment and, by all appearances, experiences no remorse. (Ferber Exh. G).

E.     **There is Nothing Protectible in the Use of a
       Woman in the Killing of a Rival Drug Dealer**

While Plaintiff claims similarity between the works in the idea of a "love-interest" used to set up a rival drug dealer (Opp. Br. at 20-22), his argument is based on a mischaracterization of the actual expression of this idea. Critically, Plaintiff mischaracterizes the role of the woman in each respective set-up. In "The Family," Anthony's mistress has a conversation with a rival drug dealer, whom she has never met, at a restaurant before he is killed by Los Angeles gang members hired by Anthony's gang. (Ferber Exh. F at 49-50). In *State Property*, however, it is the girlfriend of the rival drug dealer who tells the ABM gang where to find the rival drug dealer so he can be killed after starting a relationship with one of the ABM members. (Ferber Exh. G). Thus, the expression of this unprotectible idea is markedly different in the two works. Moreover, to the extent that Plaintiff is arguing that the similarity concerns the idea of a woman being used to carry out acts of violence, this is clearly unprotectible as it concerns a *scene a faire*, as exemplified by a woman in the film *New Jack City* who kills a rival dealer and the use of women to commit crimes in the real gangs depicted in the episode *Troy & Dino Smith* of the *American Gangster* series.[9] (Ferber Exh. U).

---

[9] Significantly, none of the cases cited by Plaintiff supports a finding that there is a substantial similarity of copyrightable expression, as they involve entirely different determinations by the court. See Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001)(determining whether quilts were substantially similar); Folio Impressions, 937 F.2d 759 (fabric designs not

## POINT II

## PLAINTIFF'S EXPERT REPORT IS IRRELEVANT
## TO THE DETERMINATION OF SUBSTANTIAL SIMILARITY

The Second Circuit has unequivocally adopted the "discerning ordinary observer" test for the substantial similarity analysis in a copyright infringement action involving both copyrightable and noncopyrightable components. Hogan, 48 F. Supp. 2d at 309 (citation omitted). Not surprisingly, courts treat expert testimony as antithetical to a determination of whether an ordinary observer would find the protectible elements, standing alone, substantially similar. Walker, 784 F.2d at 51-52 (finding it erroneous for trial court to consider expert testimony in ordinary observer analysis); Brown v. Perdue, No. 04 Civ. 7417 (GBD), 2005 WL 1863673, at *5 n.6 (S.D.N.Y. Aug. 4, 2005), aff'd, 177 Fed. Appx. 121 (2d Cir. 2006) (same); Denker, 820 F. Supp. at 729 (rejecting introduction of expert testimony analyzing substantial similarity between novel and allegedly infringing motion picture); Davis v. United Artists, Inc., 547 F. Supp. 722, 724-725 (S.D.N.Y. 1982) (Weinfeld, J.).

Accordingly, Plaintiff's attempt to introduce expert testimony on this motion (Opp. Br. at 9) is improper under the law of this Circuit. While exceptions exist for material which may not readily be evaluated by a trier of fact because of its technical nature, such as computer programs, these exceptions have no application to a copyright case where the plaintiff claims his book was infringed by a defendant's film. Cf. Computer Associates Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 713-714 (2d Cir. 1992). Thus, Plaintiff's expert's report is irrelevant to this motion.

---

substantially similar). The remaining case cited by Plaintiff on this point is completely inapposite to the facts before the Court. Price v. Fox Entm't Group, Inc., No. 05 Civ. 5259 (SAS), 2007 WL 241389 (S.D.N.Y. Jan. 27, 2007). In Price the Court declined to grant defendant's motion for summary judgment where there were identical and detailed similarities of plots and characters. Id. at *5, 9. For example, both works were slap-stick comedies dealing with dodgeball teams that compete in a dodgeball tournament to raise a certain amount of money to avoid foreclosure on a property. Id. at *2-4. In both films, the protagonist is approached by a wheelchair-bound mentor who employs unconventionally violent training techniques, suddenly dies in a freak accident, and later reappears during the dodgeball tournament in a vision exactly when the protagonist is having a crisis of faith. Id. Plaintiff has not and could not compare the two works before the court at this level of detail and has instead identified a scattershot list of similar ideas, each of which fails to allege any similarity of copyrightable *expression*. Critically, the similarities before the Court in Price did not arise from common historical facts in the public record or were otherwise unprotectible ideas commonly found in the gangster drama.

Even if introduction of the expert report were not improper, the report fails as a matter of substance. Both the substance and organization of Dr. Vianello's analysis are not the result of an independent evaluation, but rather are a carbon copy of Plaintiff's complaint. (Compare Ferber Exh. A at ¶¶ 47-86 and Exh. 15 to Plaintiff's Affirmation in Opposition to Defendants' Motions for Summary Judgment ("Plaintiff Aff. Exh.")). In fact, from the materials accompanying the report, it appears that Vianello based his report on the Complaint itself. (Ferber Reply Exh. Z at 1). Vianello alleges the exact same similarities, at the same broad level of abstraction, and in an identical order. (Plaintiff Aff. Exh. 15). The only real difference between Vianello's report and the Complaint is the candor with which he acknowledges differences between the works. Id. He details some of the extensive dissimilarities between the two works including: (1) the differences between the two mottos, (2) the disparate ways in which the auto detailing shop is utilized in the two works and (3) the different plots associated with the female characters. Id. Perhaps most significantly, he notes the stark differences in personality between the thoughtful and introspective Anthony and the "hyper-violent" and impulsive Beans, as well as the main characters' differing perspectives on family, the characters' differing approaches to infidelity and the stark differences in the treatment of violence in the two works. Id. The remainder of his report is nothing more than an attempt to describe the works in their broadest possible terms, which are often mischaracterized, in an impermissible attempt to protect ideas that are claimed to be original to the Plaintiff's book. Significantly, a report prepared in another case by Vianello based on this same flawed methodology was rejected:

> Mr. Vianello's testimony improperly claims general cinematic techniques and ideas as protectable expression. For example, Mr. Vianello asserts that the presence of on-screen characters who address the movie audience directly is a protectable expression that is substantially similar in both [the works]…In reality, however, this is a cinematic technique familiar to many, including the court, which is several decades old.
> Identity Arts v. Best Buy Enterprise Servs. Inc., No. C 05-4656 (PJH), 2006 U.S. Dist. LEXIS 24803, at *18 (N.D. Cal. Feb. 10, 2006).[10]

---

[10] Despite being asked by Plaintiff to list "matters in which you have given testimony, under oath, as an expert witness in the last four years," this case was notably absent. (Ferber Reply Exhs. AA at 1, BB at 5-6).

## CONCLUSION

For the foregoing reasons and those set forth in its moving brief, Defendant Lions Gate Films, Inc. respectfully requests that the Court grant its motion for summary judgment, dismiss the Complaint in its entirety, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        May 30, 2008

                            PRYOR CASHMAN LLP

                            By: _____
                            Tom J. Ferber (tferber@pryorcashman.com)
                            Mark A. Tamoshunas (mtamoshunas@pryorcashman.com)
                            Jordan S. Paul (jpaul@pryorcashman.com) (*admission pending*)
                               410 Park Avenue
                               New York, New York  10022
                               (212) 421-4100

                            *Attorneys for Defendant Lions Gate Films, Inc.*